689 F.2d 869
 25 Wage & Hour Cas. (BN 1238, 95 Lab.Cas. P 34,265,
11 Fed. R. Evid. Serv. 1711
 Raymond J. DONOVAN, Secretary of Labor, United States
Department of Labor, Plaintiff-Appellee,
v.
Luis CRISOSTOMO, Individually and d/b/a L & T Builders, and
Teresita Crisostomo, Individually, Defendants-Appellants.
 No. 81-4305.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 13, 1982.
Decided Oct. 7, 1982.
 
 Mark E. Cowan, Arriola & Cowan, Agana, Guam, for defendants-appellants.
 Sandra Lord, Washington, D. C., argued for plaintiff-appellee; T. Timothy Ryan, Jr., Sol. of Labor, Beate Bloch, Asst. Sol., Mary-Helen Mautner, Washington, D. C., on brief.
 On Appeal from the United States District Court for the Eastern District of Guam.
 Before WISDOM* and MERRILL, Senior Circuit Judges, and NORRIS, Circuit Judge.
 WISDOM, Circuit Judge:
 
 
 1
 In this case arising under the Fair Labor Standard Act ("FLSA"), 29 U.S.C. § 201 et seq. (1978), the Secretary of Labor sued the defendants/appellants Luis and Teresita Crisostomo, individually and doing business as L & T Builders ("employers"). The Secretary asked the court to enjoin the employers from violating the overtime and recordkeeping provisions of the FLSA and to award back wages for overtime compensation due 24 L & T employees. The district court granted judgment in favor of the Secretary. We affirm in part and reverse in part.
 
 I.
 
 2
 Luis Crisostomo and Teresita Crisostomo were each actively involved in the management and control of L & T Builders, a residential construction company on Guam, from about October 1973 to November 1978. They hired residents of the Philippines as construction workers. These employees were classified for immigration purposes as "H-2" workers-aliens allowed to work in particular occupations in the United States for a specified employer for a limited period.[1] The workers initially lived in dilapidated quonset huts and later moved into newly constructed barracks. The employers deducted $32 a week for board and lodging from the employees' wages.
 
 
 3
 In 1975, the Wage-Hour Division of the United States Department of Labor investigated the employers for compliance with the FLSA.[2] The investigators found that the employers had paid straight time to employees who had worked over 40 hours a week and asked the employers to make back wage payments. L & T made the back wage payments and Luis Crisostomo promised to comply with the Act in the future.
 
 
 4
 The Department of Labor again investigated L & T for the period from the Spring of 1976 to March 25, 1978, and again found that the employees were not being paid for overtime hours worked. As a result of that investigation, the Secretary filed this suit on June 26, 1979.
 
 
 5
 After a hearing, the district court found that 24 of the employees worked 8 hours a day, six days a week, from Monday through Saturday. The court found that L & T neither recorded the eight hours worked on Saturday by the employees nor compensated them for the work. In addition, the court determined that employees were required to "kickback" part of their wages. The employers deducted a cash payment from each employee's payroll check, which resulted in each receiving an hourly rate that was $.38 an hour less than that shown on the firm's payroll and agreed upon in the employment contract.
 
 
 6
 The court held that the defendants violated §§ 11(c) and 15(a)(5) of the FLSA by failing to maintain records of the hours worked by their employees and violated §§ 7 and 15(a)(2) by failing to compensate their employees at a rate of at least one and one half times the employees' regular hourly rate for all hours worked over 40 in each workweek. The court also held the defendants liable for the additional unpaid overtime compensation resulting from the "kickback" taken from the employees straight time wages during overtime weeks.[3] The court granted the requested injunction and awarded $58,519.39 in actual damages[4] and an equal amount in liquidated damages.[5] In determining damages, the court applied the three year statute of limitations rather than the two year statute of Section 6 of the Portal to Portal Act, 29 U.S.C. § 255 (1975), because the court held that the violation of the overtime provision was willful.[6]
 
 
 7
 On appeal defendants/appellants argue, first, that 29 U.S.C. § 216 required the district court to treat the action as having commenced on March 21, 1981, when the pre-trial order named the 24 prejudiced employees, rather than on June 26, 1979, when the Secretary filed the complaint without naming any prejudiced employees. The employees contend, therefore, that the court awarded damages barred in part by the statute of limitation, because the action was considered as having commenced on a date earlier than the correct date under 29 U.S.C. § 216. Second, the employees contend that the Secretary lacked authority under the FLSA to sue for restitution of the kickbacks taken from the employees' wages and that the district court lacked jurisdiction to award damages for underpayment of straight time wages under the FLSA. Third, they contend that the court erred in excluding evidence of admissions made by certain employees to government officials of Guam to the effect that they did not work over 40 hours a week. Finally, the employers contend that the evidence fails to support the findings that overtime compensation is due for Rodolfo Dizon, Amando Duya, and Baltazar Frias.
 
 II.
 
 8
 The appellants' first contention concerns the commencement of this action for purposes of the statute of limitation. 29 U.S.C. § 255 (1975) provides that an action must be commenced under the Act within two years after the cause of action accrues or within three years after accrual if a willful violation is involved. The employers argue that this action commenced on March 21, 1980, when the pre-trial order named as claimants the particular aggrieved workers and not on June 26, 1979, when the complaint was filed. The relevant statute, 29 U.S.C. § 216(c) (Supp.1982), is free of subtleties:
 
 
 9
 In determining when an action is commenced by the Secretary of Labor under this subsection for the purposes of the statutes of limitations provided in section 255(a) of this title, it shall be considered to be commenced in the case of any individual claimant on the date when the complaint is filed if he is specifically named as a party plaintiff in the complaint, or if his name did not so appear, on the subsequent date on which his name is added as a party plaintiff in such action.
 
 
 10
 The Secretary does not disagree with the employers' interpretation of 29 U.S.C. § 216(c), but argues that the damages award should not be modified, because the employers failed to assert that interpretation in the district court. The Secretary relies on the principle that contentions not asserted in the district court will not be adjudicated on appeal unless necessary to avoid injustice. In U. S. Financial, Inc. v. Pacific Telephone and Telegraph Co., 594 F.2d 1275 (9th Cir. 1979), this Court rejected procedural objections raised for the first time on appeal and stated, "Except in the case of jurisdictional questions or when particular circumstances indicate that injustice might otherwise result or where public policy requires, this Court declines to consider arguments for reversal not presented to the district court." 594 F.2d at 1282. See Roberts v. Hollandsworth, 582 F.2d 496, 499-500 (9th Cir. 1978); Diamond Door Co. v. Lane-Stanton Lumber Co., 505 F.2d 1199, 1206 (9th Cir. 1974); Hodgson v. Humphries, 454 F.2d 1279 (10 Cir. 1972).
 
 
 11
 The Secretary further contends that he will be prejudiced if the action is not recognized as having commenced on the filing of the complaint. If the employers had asserted early in the litigation that this aspect of § 16(c) would be argued, the Secretary would have named the claimants sooner and not have subjected the employees to losing part of the damages.[7] If the employers had raised the issue at trial, the Secretary could have explained why these workers were not named in the original complaint and asked the district court to toll the statute of limitations.[8] The Secretary contends that the delay in naming injured employees did not prejudice the defendants because the complaint notified them of the nature of the violation and their potential liability.
 
 
 12
 The employers stress that they raised the statute of limitations defense in the answer to the complaint and in the pre-trial order. They requested the Secretary to name the claimants, but the Secretary refused. As their argument goes, this is not a situation where a new issue is raised on appeal, but one where the issue was raised in the trial court but overlooked and not considered by that court.
 
 
 13
 Several courts have held that a Court of Appeals may consider an issue raised in the trial court but not considered, especially when the issue involves legal and not factual considerations.[9] In Millhouse v. Levi, 179 D.C.App. 1, 548 F.2d 357, 362 (1976), the Court held it appropriate to consider whether the ex post facto clause[10] prohibited an order by the Attorney General despite the failure of the appellants to raise this issue in the district court. The court noted that the issue was one of law and did not require further factual development. In Washington Gas Light Company v. Virginia Electric and Power Company, 438 F.2d 248 (4th Cir. 1971), the court considered the application of Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) (state action immunity), to a claim under Section 1 of the Sherman Act even though the district court did not consider it. The court concluded that not hearing the issue was inappropriate when the record provided an adequate basis for consideration on the merits and when consideration was necessary to see that justice was done. 438 F.2d at 250 (citing Hormel v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037, 1041 (1941)).
 
 
 14
 We hold that this Court can hear and decide the statute of limitations issue. The holdings in Millhouse and Washington Gas Light are persuasive authority. The issue is one of law and involves no disputed fact, and its consideration is necessary to reach the correct result in this case. This Court has not rigidly applied the rule barring claims that were not raised in the trial court, but has attempted to apply it with the ends of justice in mind. See Roberts v. Hollandsworth, 582 F.2d 496, 499-500 (9th Cir. 1978) (an unraised issue was considered on appeal to prevent injustice).
 
 
 15
 Other considerations suggest this conclusion. First, this is not a case like Hodgson, where the statute of limitations defense was brought into the case for the first time on appeal. See 454 F.2d at 1283. The defendants pleaded the statute of limitations defense in the answer, and the issue was included in the pre-trial order. Second, on appeal they ask that the statute be applied as it is plainly written and do not seek a novel interpretation. Our duty is to see that federal statutes are applied as Congress wrote them. The requirement that the Secretary identify the claimants gives the employer notice of the prejudiced employees and the aspects of his business that are the subject of the action. Identification also provides a means of determining which employees are foreclosed from bringing individual actions.[11] If the Secretary chooses not to disclose these names, for fear of reprisal to the individuals, the Secretary must suffer the consequences of that strategic decision. We hold, therefore, that this action commenced under 29 U.S.C. § 216(b) for statute of limitation purposes when the Secretary named the 24 employees as claimants (party plaintiffs).
 
 
 16
 Two subsidiary issues remain with respect to the statute of limitations. First, on what date did the Secretary name the claimants? The Secretary argues that he named the particular aggrieved employees in his Answer to the Defendants' Interrogatories (Set No. 1) on January 14, 1980, and specified the amount claimed for each employee. The employers contend that answers to interrogatories are not sufficient to name individual employees. March 21, 1980, the date the pre-trial order was filed, is the correct date for the commencement of the suit-as to the individual plaintiffs.
 
 
 17
 Courts which have considered the "named as a party plaintiff" issue under 29 U.S.C. § 256, a statute similar to § 216(c), have required that the employee be named in the complaint or a pleading equivalent to it. See Prickett v. Consolidated Liquidating Corp., 196 F.2d 67 (9th Cir. 1952) (bill of particulars); Ciemnoczolowski v. Q. O. Ordinance Corp., 119 F.Supp. 793 (D.Neb.1954), aff'd, 233 F.2d 902 (8 Cir.), cert. denied, 352 U.S. 927, 77 S.Ct. 226, 1 L.Ed.2d 162 (1956). Interrogatories do not supersede or supplement pleadings, nor do they bind parties as an allegation or admission in a pleading or pre-trial order. See Marcoin, Inc. v. Edwin K. Williams & Co., Inc., 605 F.2d 1325, 1328 (4th Cir. 1979); Freed v. Erie Lackawanna Ry. Co., 445 F.2d 619, 620-21 (6th Cir. 1971), cert. denied, 404 U.S. 1017, 92 S.Ct. 678, 30 L.Ed.2d 665 (1972); Victory Carriers, Inc. v. Stockton Stevedoring Co., 388 F.2d 955, 959 (9th Cir. 1968). The Secretary was not bound by his answers. A pre-trial order, however, supersedes the pleadings under Fed.R.Civ.P. 16 and "controls the subsequent course of the action". Fed.R.C.P. 16. See C. Wright & A. Miller, Federal Practice and Procedure § 1527 n.36 (1971 & Supp.1982). We hold, therefore, that the employees were named as party plaintiffs and that this action was commenced under 29 U.S.C. § 216(c) when the pre-trial order was filed on March 21, 1980.
 
 
 18
 A final issue to be considered concerning the statute of limitation is the equitable tolling doctrine. The Secretary contends that if the employers had raised the issue of commencement of the action at trial, the Secretary would have explained why the individuals were not named in the complaint. We sympathize with the position of the Secretary and believe that a litigant in his position could have been misled by the defendants' failure to press the commencement issue at trial. On remand, we suggest that the district court hear the reason for the Secretary's failure to name the parties earlier to determine if it justifies the application of the equitable tolling doctrine established in Partlow v. Jewish Orphans' Home of Southern California, Inc., 645 F.2d 757 (9 Cir. 1978).
 
 
 19
 The statute of limitation issue is remanded so that the damages may be recomputed in the light of our holding. The damages to be recomputed are those with respect to liquidated damages under § 16(c) and not those for back wages. The authority of the Secretary to seek back wages under § 17 of the FLSA without specifically naming employees in the complaint is well-established. See Donovan v. University of Texas at El Paso, 643 F.2d 1201 (5th Cir. 1981); Equal Employment Opportunity Commission v. Gilbarco, Inc., 615 F.2d 985 (4th Cir. 1980). The Secretary brought this suit under both §§ 16(c) and 17[12], and to the extent the back wage recovery is barred under § 16(c), we hold it to be recoverable under § 17.
 
 III.
 
 20
 The second contention of the appellant is that the Secretary did not have statutory authority to seek restitution for the kickbacks the appellants took out of the employees' paychecks when they cashed the checks. The appellants argue that the Secretary has authority under the FLSA to seek only unpaid minimum wages, 29 U.S.C. § 206, or unpaid overtime wages, 29 U.S.C. § 207, and not underpaid wages which fail to fall below the minimum wage. This Court, so the argument goes, can not expand the scope of the FLSA to include claims Congress regarded as contract disputes to be regulated by state law.
 
 
 21
 The Secretary argues that the purposes of Section 7 are "to spread employment more widely through the work force by discouraging employers from requiring more than forty hours per week from each employee," Marshall v. Chala Enterprises, Inc., 645 F.2d 799, 803 (9th Cir. 1981), and to compensate employees for the strain of working long hours. See Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 578, 62 S.Ct. 1216, 1220, 86 L.Ed. 1682, 1688 (1941); Dunlop v. Gray-Goto, 528 F.2d 792, 794 (10th Cir. 1976). If an employer were permitted to take kickbacks from straight time pay during overtime weeks, the purpose of the Court to spread work and to provide for the strain of long hours by making overtime work more expensive would be circumvented. An employer could effectively eliminate the premium paid for overtime by taking kickbacks out of straight time wages in an amount equal to or greater than the overtime premium. We hold that the Secretary may seek restitution for kickbacks from straight time wages as overtime compensation for those weeks in which overtime is worked.[13] To hold otherwise would allow employers to frustrate the policy of Section 7 of the FLSA through the use of kickbacks. The district court properly awarded liquidated damages for the kickbacks, because they are a necessary element of the overtime compensation.[14]
 
 IV.
 
 22
 During the trial, the court excluded as hearsay the testimony of two government officials of Guam who conducted confidential interviews with seven employees. These officials would have testified that some of these employees stated they did not work overtime. The appellants contend that this testimony was admissible under Fed.R.Evid. 801(d)(2), on the grounds that an admission by a party-opponent is not hearsay, or under Fed.R.Evid. 804(b)(3), as an exception to the hearsay rule for a statement against interest.
 
 
 23
 We hold that the district court properly excluded this evidence. The testimony did not fall within Fed.R.Evid. 801(d)(2) because the admissions were not by parties or real parties in interest. In Brennan v. Heard, 491 F.2d 1, 4-5 (5th Cir. 1974), the Court found that the Secretary is the real party in suits brought under the FLSA and rejected the conclusion that the employees were the real parties in interest. The court reasoned that the appearance of the Secretary destroyed the private character of the dispute. Cf. Wirtz v. Malthor, Inc., 391 F.2d 1, 3 (9th Cir. 1968) (holding that a suit to prevent withholding of minimum wages and overtime compensation is meant to indicate a public right); and Crawford Production Co. v. Bearden, 272 F.2d 100, 103 (10th Cir. 1059) holding that an employee is not in privity with the Secretary for res judicata purposes with respect to issues of recordkeeping and overtime compensation.
 
 
 24
 This testimony falls short of being admissible under Fed.R.Evid. 804(b)(3). This rule requires that the statement be so decidedly against the declarant's interest "that a reasonable man in his position would not have made the statement unless he believed it to be true." Fed.R.Evid. 804(b)(3). A reasonable man in the position of an H-2 worker, who could be sent back to the Philippines at his employer's discretion, might feel it was in his interest to state he was paid properly to avoid the wrath of his employer. When a statement is not against the interest of the declarant, it lacks the foundation for trustworthiness on which this rule is based. See United States v. Satterfield, 9 Cir. 1978, 572 F.2d 687, 691, cert. denied, 439 U.S. 840, 99 S.Ct. 128, 58 L.Ed.2d 138, holding that an exception to hearsay rule in Rule 803 is made because the circumstances of the declaration indicate that the declarant's perception, memory, narration, or sincerety concerning the matter asserted in the statement is trustworthy. See generally 5 Wigmore, Evidence § 1457 (Chadborne Rev. 1974 & Supp.1982).[15]
 
 V.
 
 25
 The appellants' final contention is that the evidence fails to support the judgment as it pertains to Rodolfo Dizon, Amando Duya, and Baltazar Frias. With respect to Dizon and Duya, the district court's findings are supported by the evidence and are not clearly erroneous. With respect to Frias, the appellants contend that they were entitled to a set-off from his back wages for the food and lodging provided him under 29 U.S.C. § 203(m), which in certain circumstances allows an exception to the requirement that statutory wages be paid in cash and "free and clear". See Brennan v. Heard, 491 F.2d 1, 3-4 (5th Cir. 1974). The appellants failed to make any showing at trial that they fell within the exception of 29 U.S.C. § 203(m), and the district court properly denied set-off with respect to Frias.[16]
 
 
 26
 We reverse in part, affirm in part, and remand the case for a hearing consistent with this opinion.
 
 
 
 *
 The Honorable John Minor Wisdom, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation
 
 
 [1]
 An H-2 worker is excluded from the coverage of the immigration law. The term "immigrant" does not include an alien "who is coming temporarily to the United States to perform temporary services or labor, if unemployed persons capable of performing such service or labor cannot be found in this country." 8 U.S.C. § 1101(a)(15)(H)(ii) (1981). Before an alien worker may enter the United States, the Secretary of Labor must certify that no resident workers are available to perform the work and that wages or working conditions in the United States will not be affected adversely. 8 U.S.C. § 1182(a)(14) (1981). The alien's employer must also petition the government before the alien is granted a visa. 8 U.S.C. § 1184 (1970). See Saxbe v. Bustos, 419 U.S. 65, 95 S.Ct. 272, 42 L.Ed.2d 231 (1974)
 
 
 [2]
 The Fair Labor Standards Act regulates the minimum wage which must be paid to workers and the maximum hours which can be worked without granting overtime compensation. Section 6 of the FLSA, 29 U.S.C. § 206, prescribes the minimum wage which must be paid for employees engaged in commerce. Section 7 of the FLSA, 29 U.S.C. § 207, provides that an employer may not employ any employee for over 40 hours a week unless the employee is paid at a rate not less than one and one-half times the regular rate at which he is employed. The FLSA authorizes the Secretary of Labor to bring an action to recover the amount of unpaid minimum wages or overtime compensation and an equal amount as liquidated damages from non-complying employers. 29 U.S.C. § 216(c). Section 17 of the FLSA, 29 U.S.C. § 217, allows the district court to enjoin violations of the FLSA
 
 
 [3]
 The court ordered no restitution for kickbacks in non-overtime weeks. Section 16(c) of the FLSA authorizes the Secretary only to seek unpaid minimum wages or overtime compensation. In the weeks when no overtime was worked, the Secretary had no authority to seek restitution of the kickbacks as part of unpaid overtime compensation. No violation of Section 6 of the FLSA occurred because the employers' taking of kickbacks did not result in the employees receiving less than the minimum wage specified in the FLSA
 
 
 [4]
 The court reached this amount by determining the number of overtime weeks worked by each employee. This number was multiplied by eight hours for each unpaid Saturday of work and by the appropriate payroll rate for the particular employee. The result of this computation was the unpaid overtime compensation due. Fifteen dollars for each overtime workweek was added to this amount to allow restitution for the amount of straight time compensation that had been kicked back
 
 
 [5]
 Section 16(c) of the FLSA provides for the awarding of liquidated damages. The district court awarded liquidated damages because the appellants failed to show their violations of the overtime provision occurred despite their good faith effort to comply. See 29 U.S.C. § 260 (1975) allowing trial judges discretion to deny or reduce liquidated damages under Section 16 of the FLSA if the employer shows that the violation was in good faith and if the employer had reasonable ground for believing that his act was not a violation
 
 
 [6]
 Section 6 of the Portal to Portal Act. 29 U.S.C. § 255 (1975) provides:
 Any action ... to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standard Act of 1938, as amended ...
 (a) ... may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.
 
 
 [7]
 The only aspect of the statute of limitation brought up at trial was whether the violations were willful and therefore subject to the three years, rather than the two years, statute of limitation in 29 U.S.C. § 255(a)
 
 
 [8]
 This Court allowed the equitable tolling of a private action under § 16 in Partlow v. Jewish Orphans' Home of Southern California, 645 F.2d 757 (9th Cir. 1981). In that case we decided that 29 U.S.C. § 255 established only a procedural period that could be avoided if equity warranted it. The equitable consideration in Partlow was that the effect of not tolling the statute would have been to bar forever claims against the defendant by employees who were improperly solicited to join the action. 645 F.2d at 760. See Ott v. Midland-Ross Corp., 600 F.2d 24, 30 (6th Cir. 1979) allowing equitable tolling under 29 U.S.C. § 255 when the plaintiff alleged that the defendant's misrepresentation induced him not to file a complaint
 
 
 [9]
 The most famous example of an appellate court considering an issue not raised in the proceedings below is undoubtedly Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Justice Brandeis overruled Swift v. Tyson, 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842) when that matter was not before the Court or considered in the briefs of the parties. It must be said Erie is a special case, because the rule of Swift v. Tyson had been challenged repeatedly
 10 U.S. Constitution, Article I, § 9, cl. 3.
 
 
 [11]
 Section 16(c) provides in part:
 The right provided by subsection (b) to bring an action by or on behalf of any employee to recover the liability specified in the first section of such subsection and of any employee to become a party plaintiff to any such action shall terminate upon the filing of a complaint by the Secretary in an action under this subsection in which a recovery is sought of unpaid minimum wages or unpaid overtime compensation under section 6 and 7 or liquidated or other damages provided by this subsection owing to such employee by an employer liable under the provisions of subsection (b), unless such action is dismissed without prejudice on motion of the Secretary.
 
 
 [12]
 Sections 16 and 17 provide distinct and alternative remedies, and the peculiar requirements of § 16 have no application to an action brought under § 17. See Equal Employment Opportunity Commission v. Gilbarco, Inc., 615 F.2d 985, 989 & n.3 (4th Cir. 1980); Hodgson v. Wheaton Glass Co., 446 F.2d 527, 534 (3d Cir. 1971)
 
 
 [13]
 The Secretary has interpreted the overtime provision as requiring full payment for all straight time hours worked as a prerequisite to satisfying the overtime provision. 29 C.F.R. § 778.315. Our holding recognizes that the Secretary's interpretation of the statute he administers is entitled to deference. See Donovan v. Scoles, 652 F.2d 16, 19 (9th Cir. 1981) (citing Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616), cert. denied, --- U.S. ----, 102 S.Ct. 1276, 71 L.Ed.2d 460 (1965)
 
 
 [14]
 We also reject the appellants' claim that the kickback issue was not pleaded and should not be considered by this Court. The kickbacks were an integral part of the overtime violation and required no additional pleading
 
 
 [15]
 We note that the persons making these statements were unidentified, the interviews were not in the declarant's native language, and no interpreter was present. These facts further undermine the statements' trustworthiness
 
 
 [16]
 Courts have placed the burden on the employer to prove that the terms of 29 U.S.C. § 203(m) have been met. See Brennan v. Veterans Cleaning Service, Inc., 482 F.2d 1362, 1370 (5th Cir. 1973) holding that the burden is on an employer under 29 U.S.C. § 203(m) to segregate permissible from impermissible deductions from wages. See, e.g., Brennan v. Elmer's Disposal Service, Inc., 510 F.2d 84, 86-87 n.1 (9 Cir. 1975)